Eugene Dudley, Petitioner *v.* Workmen's Compensation Appeal Board (Township of Marple et al.), Respondents.

234

Submitted on briefs December 7, 1983, to Judges CRAIG, DOYLE and BLATT, sitting as a panel of three.

*Howard Richard*, with him *Michael A. Paul*, and *Leonard V. Tenaglia, Richard, DiSanti, Hamilton, Gallagher and Paul*, for petitioner.

*William J. McKee, LaBrum and Doak*, for respondent, Township of Marple et al.

OPINION BY JUDGE CRAIG, February 10, 1984:

Claimant Eugene Dudley appeals from a decision of the Pennsylvania Workmen's Compensation Appeal Board, which reversed a referee's decision granting benefits to Dudley. We must determine

whether the board erred in concluding that Dudley's claim was barred by the statute of limitations.[1]

On January 29, 1973, during the course of his duties as a police officer with the Township of Marple, Dudley fell, injuring his face, arm and back. The township police surgeon, Dr. Linn, treated Dudley for his injuries and referred him to a second doctor who operated on his elbow. Dr. Linn continued to treat Dudley for his back injuries and also for pains which radiated down his leg. In 1978, Dr. Lubin, then police surgeon, began treating Dudley for continued back pain, and in July, 1978, Dudley underwent a hemi-laminectomy, performed by still another doctor. In August, 1979, Dudley retired from the police force on a service-connected disability pension.

The township paid Dudley his full salary for the days he was unable to work, and it apparently submitted the medical bills for Dudley's initial surgery to Blue Cross/Blue Shield, through a township-sponsored program. The township refused to pay for Dudley's second surgery. By petition filed in November of 1979, Dudley now seeks compensation benefits and reimbursement for medical expenses arising from his July, 1978 surgery.

After hearings, the referee found as fact that, because the police secretary had prepared several forms, with Dudley's assistance, following the 1973 accident, Dudley reasonably believed the township had filed a workmen's compensation claim on his behalf. The referee therefore concluded that, because the town-

---

[1] Section 315 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §602 provides, in relevant part:

In cases of personal injury all claims for compensation shall be forever barred, unless within three years after the injury, . . . one of the parties shall have filed a petition [for benefits]. . . .

ship's action had induced Dudley to believe it had filed his claim, the three-year statute of limitations did not bar his present claim.

On appeal, the board reversed, concluding that the statute of limitations did bar Dudley's claim. Although the board stated that the referee had committed an error of law, review of its decision reveals that the board actually determined that the evidence did not support the referee's finding of fact mentioned above.[2]

The cases have firmly established that, in workmen's compensation cases the referee, not the board, is the ultimate factfinder. *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). In its review, the board is limited, as is this court, to a determination of whether substantial evidence supports the referee's findings of fact and whether an error of law was committed. *Ofcansky v. Workmen's Compensation Appeal Board*, 69 Pa. Commonwealth Ct. 249, 450 A.2d 806 (1982). The board may not ignore a referee's findings or substitute its own, and it may not avoid that rule by labeling the issue as an error of law.

Dudley testified that his supervisor had instructed him to report to the superintendent's office and complete the workmen's compensation form; he did report and aided the police secretary in completing some forms. He further testified that he believed that the employer had filed his workmen's compensation claim and that the medical treatments and payments for lost wages which he received from 1973 through 1978 were workmen's compensation benefits.

---

[2] The board concluded:
"We have reviewed the entire record thoroughly. There is absolutely nothing in the record to indicate that the Claimant was mislead (sic) in any way."

In order to toll the statute of limitations, Dudley bore the burden of showing, by clear and precise evidence, that the employer, by its actions or statements, had lulled him into a false sense of security regarding the filing of his claim.[3] The record does contain, as noted above, sufficient evidence on which the referee could find that Dudley met that burden; therefore, we reverse the board's decision and order the findings of the referee reinstated.[4]

Proper resolution of this case, however, requires further consideration by the referee. Although the employer's actions caused a delay of the date on which the limitations period began, that suspension was not an indefinite one. The referee must now determine

---

[3] *Taglianetti v. Workmen's Compensation Appeal Board*, 63 Pa. Commonwealth Ct. 456, 439 A.2d 844 (1981) ; *Workmen's Compensation Appeal Board v. Niemann*, 24 Pa. Commonwealth Ct. 377, 356 A.2d 370 (1976) ; *M. Gordon & Sons, Inc. v. Workmen's Compensation Appeal Board*, 14 Pa. Commonwealth Ct. 288, 321 A.2d 396 (1974).

[4] Dudley's counsel also invokes the provisions added to section 315, 77 P.S. §602, by amendment in 1974, which defer the commencement of the limitations period until the expiration of the receipt of benefits under the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638. However, the only portion of the testimony cited by counsel indicates merely that the township paid Dudley one week of full pay in 1973; no further period of full pay occurred until the period beginning July 10, 1978 and ending January 1, 1979. Testimony concerning additional payments for intermittent and partial days off during the years between was neither sufficiently detailed nor substantial. Section 315 requires suspension only while benefits are being received; it does not mandate an indefinite suspension following every Heart and Lung Act payment on some theory that a possibility exists that there may be some future payment for the same injury. Like the referee and the board, we cannot accept this contention; under even the amended version of section 315, Heart and Lung Act payments would not have deferred the commencement of the limitations period beyond the expiration of those payments in 1973.

the date on which the statute of limitations began to run against Dudley.

Although the formulation in our previous decisions has been that the limitations period ran from "the time of the last conduct or declarations of the employer which lulled the claimant into a false sense of security,"[5] examination of the holdings in those cases reveals that this court has never applied that formulation to bar a claim. The typical case is one where, after determining that the claimant did not prove the statute of limitations had been tolled, the court goes on to observe that, even if the statute has been suspended, it had again began to run, and had expired before the claimant filed his petition.[6] In the two cases where the court, after concluding that the limitations period had been tolled, discussed whether the claimant had filed within the delayed period, we determined that the claim was timely, *M. Gordon & Sons, Inc. v. Workmen's Compensation Appeal Board,* 14 Pa. Commonwealth Ct. 288, 321 A.2d 396 (1974); *Iwaskewyez v. U.S. Steel Corp.,* 7 Pa. Commonwealth Ct. 211, 298 A.2d 62 (1972).

The history of the "last misleading act" formulation extends through several earlier decisions of the Superior Court[7] to its origin in an 1885 Pennsylvania

---

[5] *Tarnoski v. Kanarr Corp.,* 12 Pa. Commonwealth Ct. 488, 492, 317 A.2d 904, 906 (1974).

[6] *Taglianetti v. Workmen's Compensation Appeal Board,* 63 Pa. Commonwealth Ct. 456, 439 A.2d 844 (1981); *Workmen's Compensation Appeal Board v. Griffith,* 28 Pa. Commonwealth Ct. 623, 368 A.2d 1371 (1977); *Tarnoski v. Kanarr Corp.,* 12 Pa. Commonwealth Ct. 488, 317 A.2d 904 (1974); *Kushner v. Strick Trailer Co.,* 10 Pa. Commonwealth Ct. 518, 312 A.2d 471 (1973); *Palmer v. City of Pittsburgh,* 9 Pa. Commonwealth Ct. 526, 308 A.2d 179 (1973).

[7] *Mucha v. M. L. Bayard & Co.,* 177 Pa. Superior Ct. 138, 108 A.2d 925 (1954); *Guy v. Stoecklein Baking Company,* 133 Pa. Superior Ct. 38, 1 A.2d 839 (1938).

Supreme Court case, *Armstrong v. Levan,* 109 Pa. 177, 1 A. 204 (1885). In that tort suit, the plaintiff had reasonably relied on the defendant's promise to pay plaintiff's damages; when the defendant failed to pay, the Supreme Court held that the plaintifff's suit, instituted after the running of the statute of limitations, was not barred because the defendant was estopped by his actions from pleading the limitations period. The court concluded, without citing any authority, that the statute began to run from the date of the defendant's promise to pay.

The concept of estoppel to plead the bar of the statute of limitations, as it has developed through years of jurisprudence, now clearly embraces the view that the limitations period should not run against those who are not aware, and could not reasonably be charged with knowledge, that they have been misled. The Pennsylvania Supreme Court, in *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964) explained:

> " 'If the circumstances are such that a man's eyes should have been opened to what was occurring, then the statute begins to run from the time when he could have seen, but if by concealment, through fraud or otherwise, a screen has been erected by his adversary which effectually obscures the view of what has happened, the statute remains quiescent until actual knowledge arises.' "

416 Pa. at 96, 204 A.2d at 477, quoting *Schwab v. Cornell,* 306 Pa. 536, 539, 160 A. 449, 450 (1932).

The "discovery. rule," applicable to medical malpractice actions, is a closely related application of estoppel principles where fraud or deception, intentional or otherwise, may cause a potential plaintiff to fail to file a claim within the statutory period.

That doctrine provides that "where the existence of an injury cannot be reasonably ascertained, the statute of limitations does not begin to run until such time as the injury's existence is known or discovered, or becomes knowable or discoverable by the exercise of reasonable diligence." *DeMartino v. Albert Einstein Medical Center, Northern Division,* Pa. Superior Ct. , , 460 A.2d 295, 298 (1983), quoting *Petri v. Smith,* Pa. Superior Ct. , , 453 A.2d 342, 346 (1982). The court in *DeMartino* further explained that "[a]ssurances given by a physician which lull a patient into a false sense of security act as 'concealment' and toll the statute." Pa. Superior Ct. at , 460 A.2d at 301.[8]

The purposes and policies underlying the statute of limitations, as our Superior Court has explained, are "the stimulation of the prompt pursuit of legal rights and the avoidance of the inconvenience and prejudice resulting from deciding stale cases on stale evidence." *DeMartino,* Pa. Superior Ct. at , 460 A.2d at 299.

However, an oversimplified interpretation of the cases, that the statute necessarily begins to run from the last misleading act of the employer, would not fairly serve those purposes. That view, for which we have been unable to find support in the actual holdings, would function to reward the employer who is the most successful in deceiving an injured employee. If an employee remains under a false impression, as created by his employer's last act, throughout the statutory time period, he would find that the remedial

---

[8] For further explanation and application of the discovery rule, see *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959) ; *McNair v. Weikers,* 300 Pa. Superior Ct. 379, 446 A.2d 905 (1982) ; *Courts v. Campbell,* 245 Pa. Superior Ct. 326, 369 A.2d 425 (1976).

provisions of the workmen's compensation laws are no longer available to him.

We cannot say that an injured worker, who does not file a claim because he reasonably believes his employer has done so on his behalf, is guilty of sleeping on his rights. When an employer, through its acts or statements, lulls a claimant into a false sense of security regarding the filing of a workmen's compensation claim, those actions, whether intentional or unintentional,[9] toll the running of the limitation period of section 315 of the Act. That period reasonably should not begin until the claimant knows, or with reasonable diligence could know, of his deception.[10]

Therefore, we remand the case to the board, with instructions that it remand to the referee for a finding of the earliest date on which Dudley knew, or with reasonable diligence could have known, that his employer had misled him, albeit unintentionally, with regard to the filing of his workmen's compensation claim.

ORDER

Now, February 10, 1984, the decision of the Workmen's Compensation Appeal Board, docketed at A-81935, dated October 7, 1982, is reversed and the find-

---

[9] *Thorn v. Strawbridge and Clothier*, 191 Pa. Superior Ct. 59, 155 A.2d 414 (1959); *Workmen's Compensation Appeal Board v. Griffith*, 28 Pa. Commonwealth Ct. 623, 368 A.2d 1371 (1977); *Palmer v. City of Pittsburgh*, 9 Pa. Commonwealth Ct. 526, 308 A.2d 179 (1973).

[10] To the extent that some earlier decisions indicate that "active" fraud is required for the tolling of the statute pending discovery, we are convinced that the statements or actions of the employer which induce a claimant's misconception, like a physician's assurances to a patient, are sufficient to bring workmen's compensation cases within the analytical framework of those decisions. *See e.g. Deemer v. Weaver*, 324 Pa. 85, 187 A.2d 215 (1936); *Barr v. Luckenbill*, 351 Pa. 508, 41 A.2d 627 (1945).

ings of fact of the referee are reinstated. The case is remanded to the board, which shall remand to the referee, for a finding of the earliest date on which Dudley knew, or with reasonable diligence could have known, that he had been misled about the filing of his workmen's compensation claim.

Jurisdiction relinquished.